**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

———————————————————————————

ANTHONY A. ANTONIOU and
IRENE D. ANTONIOU,

        Plaintiffs,

    v.                                        Case No. 07-CV-675

US BANCORP
f/k/a First Bank Southeast NA
d/b/a US Bank NA,

        Defendant.

———————————————————————————

# ORDER

On June 28, 2007, plaintiffs, Anthony and Irene Antoniou, filed suit against defendant alleging that defendant impermissibly refused to cash plaintiffs' certificate of deposit ("CD") purchased from defendant's predecessor. Given the diversity of citizenship between the parties, and the fact that the amount in controversy exceeds $75,000, defendant removed this action to this court on July 23, 2007. After some discovery had taken place, the court, upon request, permitted defendant to amend its answer to add affirmative defenses as well as a counterclaim. The court granted plaintiffs an opportunity to conduct further discovery as to these claims and defenses. Now that discovery is closed, the parties have filed cross-motions for summary judgment. Upon consideration of these motions, the court finds that plaintiffs are entitled to summary judgment for the reasons stated herein.

## BACKGROUND

On October 2, 1991, plaintiffs purchased a CD in the amount of $144,997.79 from First Bank Southeast of Lake Geneva. (Def. Resp. Pl. PFOF [Dkt. #60] ¶ 1). Shortly thereafter, plaintiffs placed the CD in a safety deposit box, where it remained for approximately 15 years because plaintiffs forgot about the CD's existence. (Id. ¶ 3).

From 1990 through 1995, Anvan/GN Limited Partnership ("Anvan") and Anvan/GN Limited Partnership No. 7 ("Anvan No. 7") – both Anthony Antoniou ("Antoniou") controlled entities engaged in the construction and sale of condominiums – took out a series of loans ("the Anvan loan" and "the Anvan No.7 loan") from First Bank Southeast of Lake Geneva (which merged with Firstar Bank Milwaukee in 1995). (Id. ¶ 4; Def. PFOF [Dkt #49] ¶ 4). These loans were called due by Firstar in September of 1995. (Bennet Aff. Supp. Pl. Mot. S.J. [Dkt. #43] Ex. 5). At the times the loans were called, there were approximate balances of $166,452.91 due on the Anvan No. 7 loan and $1,008,835.72 (collectively: "the Anvan debt") due on the Anvan loan. (Def. Resp. Pl. PFOF ¶ 9). On March 22, 1996, Anvan, Anvan No. 7, Antoniou, and other personal guarantors of the Anvan debt, entered into a "Moratorium Agreement" with Firstar. (Id. ¶ 12).

The Moratorium Agreement specified that if collateral, consisting of certain real estate projects specifically identified therein, were completed and sold by designated dates and for certain minimum prices, then Firstar would provide

additional credit of up to 135% against the loan balance. (Id. ¶ 14-15). Anvan and Anvan No. 7 timely completed, and obtained the required release price for, the real estate projects identified in the Moratorium Agreement. (Id. ¶ 21). After applying the sale proceeds to the Anvan debt, the Anvan No. 7 loan was paid in full, and the Anvan loan had a balance due of $217,900.27. (Id. ¶ 22). No assets owned by any of the personal guarantors, including Antoniou, were applied to the remaining Anvan debt, nor did Firstar attempt to collect the remaining balance from the assets of any of the guarantors. (Id. ¶¶ 23-24). On December 14, 1997, Firstar wrote-off the $217,900.27 balance and issued a 1099 to Anvan reflecting the forgiveness of debt. (Id. ¶ 25).

In the spring of 2007, Irene Antoniou went to her safety deposit box to locate a birth certificate and found the CD placed there in 1991. (Id. ¶ 27). On May 2, 2007, plaintiffs presented the CD to defendant U.S. Bank (Firstar merged with U.S. Bank in 1999) for payment. Defendant refused to pay the CD and sent a Notice of Dishonor to plaintiffs. (Id. ¶ 29).

## ANALYSIS

**I.   Summary Judgment Standard**

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact

-3-

is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II.     Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment on plaintiffs' claim, arguing that its refusal to cash the CD is justified because Antoniou released the bank from its obligations concerning the CD when he signed the Moratorium Agreement, which contained a broad release provision. Additionally, defendant has asserted a counterclaim against Antoniou, arguing that by filing this lawsuit he committed an "Event of Default" under the Moratorium Agreement, and that according to the Agreement an Event of Default entitles defendant to recover the balance of the obligations covered by the Agreement. Defendant has moved for partial summary judgment on its counterclaim, asking the court to grant it summary judgment as to the issue of liability, and then to resolve the issue of damages in further proceedings.

-4-

Defendant claims it is entitled to summary judgment on plaintiffs' claim because the Moratorium Agreement released it of its obligation to cash plaintiffs' CD. The Moratorium Agreement contained a release provision stating:

> <u>Release</u>. In order to induce the Bank to refrain from exercising its rights and remedies against the Debtors and Guarantors, the Debtors and Guarantors agree as follows:
>
> (a) The Debtors and Guarantors, each acting on behalf of its, his or their respective successors, assigns, heirs, bankruptcy trustees, and personal representatives, hereby give a full release from all claims, *sums of money*, accounts, actions, suits, proceedings, and demands whatsoever, which either of them at any time had or has up to the date of the execution of this Agreement, against the Bank, its officers, directors, related corporations, branches, attorneys, employees, agents, and successors for or by reason of or in respect to any act, cause, matter or thing; and
>
> (b) It is the express intention of the Debtors and Guarantors to provide the fullest possible release of all claims. By their signatures below, the Debtors and Guarantors represent that they have read this release, had adequate opportunity to discuss it with an attorney of their choice and fully understand its terms.

(Bennet Aff. Supp. Pl. Mot. S.J. [Dkt. #43] Ex.13, ¶ 7)(emphasis added). Defendant asserts that a CD is a "sum of money," and thus Antoniou's signing of the Moratorium Agreement released his claim against defendant for payment on the CD.

Thus, the issue before the court is one of contract interpretation, specifically, whether the release provision in the Moratorium Agreement does in fact release defendant from its obligation to honor plaintiffs' CD. When engaging in contract interpretation, the goal of the court "is to ascertain the true intentions of the parties as expressed by the contractual language." *State ex rel. Journal/Sentinel v. Pleva*,

-5-

456 N.W.2d 359, 362 (Wis. 1990).[1] "If the contract is unambiguous, [the court's] attempt to determine the parties' intent ends with the four corners of the contract without consideration of extrinsic evidence. *Huml v. Vlazny*, 2006 WI 87, ¶ 52, 716 N.W.2d 807.

The court finds that the parties' intent can be found unambiguously within the four corners of the contract, and thus no resort to extrinsic evidence is necessary. In looking at the four corners of the contract, the court, contrary to defendant's suggestions, must look not only at the release provision, but at the entire contract. Further, in construing releases, "[t]he intent is to be sought from the whole and every part of the instrument . . . . and although the terms of a release are general, their operation will be limited to those things within the contemplation of the parties at the time of its execution." *Resink v. Wallenfang*, 99 N.W.2d 196, 199-200 (Wis. 1959) (citations omitted). "[T]he ultimate test of the intended scope of [a release] is whether the obligee has received 'full satisfaction, or that which the law must consider as such.'" *Brown v. Hammermill Paper Co.*, 276 N.W.2d 709, 713 (Wis. 1979) (quoting *Lovejoy v. Murray*, 70 U.S. 1, 3 (1865)).

---

[1] According to Section 9(d) of the Moratorium Agreement, the Agreement is to be "governed and construed in accordance with the internal laws of the State of Wisconsin." (Bennet Aff. Supp. Pl. Mot. S.J. Ex.13, ¶ 9). Because the choice of law provision does not exclude Wisconsin's choice of law rules, the provision operates not to dictate the applicable substantive law of the case, but rather the law applicable to determine the governing substantive law. In a contract case, "contract rights must be determined by the law of the jurisdiction with which the contract has its most significant relationship." *State Farm Mutual Automobile Ins. Co. v. Gillette*, 2002 WI 31, ¶ 26, 641 N.W.2d 662. Factors to consider include: (1) place of contracting; (2) place of performance; (3) place of negotiation; (4) location of the subject matter of the contract; and (5) residences or places of business of the parties. *McCraw v. Mensch*, 461 F. Supp.2d 872, 877 (W.D. Wis. 2006). In the instant case, factors 1-4 are all in Wisconsin, as is the place of business of some of the parties to the contract. Thus, Wisconsin's substantive law of contracts governs this case.
-6-

When looking at the Moratorium Agreement as a whole, it is clear that the CD was not within the contemplation of the parties. The Agreement set out specific actions required by the debtors and guarantors. (Bennet Aff. Supp. Pl. Mot. S.J. Ex.13, ¶ 2). It also specified certain pieces of collateral (all of it being real estate owned by Anvan and Anvan No. 7) as well as the minimum release price for each piece of collateral. (Id. ¶ 8). The Agreement further explained, in detail, the manner in which the proceeds from the sold collateral would be applied to the debt. (Id.). It is evident from these provisions that there was no contemplation whatsoever of the release of the CD, worth approximately $186,000 at the time. For a contract, defined by detailed specifications regarding insular pieces of collateral (and calculations as to how to apply the proceeds of that collateral to the debt), to release a party from a $186,000 CD – without any reference to that CD or any mention as to how those funds would apply to the debt – would be completely irrational. *See Fishman v. LaSalle National Bank*, 247 F.3d 300, 302 (1st Cir. 2001) ("The presumption in commercial contracts is that the parties were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons."). Interpreting the contract in the manner suggested by defendant would make no sense, and the court declines to do so. *See Dispatch Automation, Inc. v. Richards*, 280 F.3d 1116, 1119 (7th Cir. 2002) ("When a contractual interpretation makes no economic sense, that's an admissible and, in the limit, a compelling reason for rejecting it.").

If the court has erred by not considering extrinsic evidence, such error is clearly harmless, for the extrinsic evidence demonstrates, even more clearly than the contract itself, that the parties did not intend to release defendant from its obligations under the CD. The extrinsic evidence shows that, after the proceeds from the sale of the collateral identified in the agreement were applied to the Anvan debt, there was a balance due of $217,900.27. (Def. Resp. Pl. PFOF ¶¶ 21-22). It also shows that despite the substantial net worth (in excess of $15 million as of July 1995) of the guarantors of the Anvan debt, defendant did not attempt to collect the remaining balance of the debt from any of the personal assets (such as CDs or bank accounts) of any of the guarantors. (Id. ¶¶ 11, 23-24). Rather, defendant wrote off the remaining balance, and issued Anvan a 1099 reflecting forgiveness of $217,900.27. (Id. ¶ 25). The memorandum reflecting the forgiveness of the debt explicitly stated that "no additional payments are expected before the loan is removed from the system." (Id.). This shows that plaintiffs' CD, was neither released nor intended to be released. Its existence was not within the contemplation of the parties; there was absolutely no agreement of any kind pertaining to the CD.

Defendant moved for summary judgment on plaintiffs' claim, arguing that the claim must fail because the CD was released. Since the court finds the CD was not released, defendant's motion for summary judgment on plaintiffs' claim must be denied. Defendant also moved for partial summary judgment as to the issue of liability on its counterclaim. However, defendant did not present any facts,

argument, or law in support of its counterclaim. Accordingly, defendant's motion for partial summary judgment as to its counterclaim must also be denied.[2]

### III.   Plaintiffs' Motion for Summary Judgment

Plaintiffs have moved for summary judgment on their claim against defendant for defendant's failure to honor the CD. Defendant asserted the following affirmative defenses in its amended answer: recoupment, accord and satisfaction, estoppel, waiver, and release. Other than raising these affirmative defenses in its amended answer, defendant has not argued them (and thus certainly has not met its burden of proof regarding them) in response to plaintiffs' motion for summary judgment. The court has already demonstrated that defendant's claim of release fails. Likewise each of the other affirmative defenses must fail as well.

"A recoupment . . . is a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction." *Zweck v. D.P. Way Corp.*, 234 N.W.2d 921, 926 (Wis. 1975). Obviously, plaintiffs' right to payment under the CD did not arise from the same, or even a related, transaction from which the Anvan debt arose. Defendant's recoupment defense accordingly fails.

Accord and satisfaction is a manner in which a disputed claim may be discharged. To have accord and satisfaction, the parties must have intended to

---

[2] The same result would attain even if defendant had supported its motion for partial summary judgment on its counterclaim, because the court's ruling as to the issue of release essentially precludes defendant from succeeding on its counterclaim.

-9-

enter into an agreement to discharge an existing disputed claim. *Hoffman v. Ralston Purina Co.*, 273 N.W.2d 214 (1979). "There must be expressions sufficient to make the creditor understand or to make it unreasonable for him not to understand that the performance is offered in full satisfaction of the claim." *Id.* at 217. There were no indications in the instant case that forgiveness of the balance of the Anvan debt was offered in full satisfaction of the claim arising from the CD. Defendant's accord and satisfaction defense accordingly fails.

"The elements of estoppel are as follows: action or non-action on the part of one against whom estoppel is asserted, which induces reasonable reliance thereon by the other, and which is to his or her detriment." *Alexander Co., Inc. v. Bensaid*, 2002 WI App 165, ¶ 10, 647 N.W.2d 467. There is no evidence in the instant case that Antoniou took any action, or forbore any action, that would indicate to defendant that Antoniou would relinquish his claim arising from his CD if defendant would forgive the Anvan debt. Defendant's estoppel defense accordingly fails.

A waiver is a knowing and voluntary relinquishment of a claim. WIS JI-CIVIL 3057 (1993). Thus, a person waiving a right must have the intent to do so. *Murray v. Roundhouse Marketing & Promotion, Inc.*, 2003 WI App. 111, ¶ 24, 664 N.W.2d 126. There is no evidence that Antoniou had any intent when he signed the Moratorium Agreement to waive his right to collect on his and his wife's CD. Thus, defendant's waiver defense fails.

-10-

Plaintiffs' complaint, with a copy of the CD attached to it, established a prima facie case for plaintiffs. As all of the defenses defendant raised in response to plaintiffs' case have been refuted, and as defendant has offered no legal reason why it should be excused from paying the sum owed on the CD, the court finds that plaintiffs are entitled to summary judgment as to their claim.

Plaintiffs also moved for summary judgment on defendant's counterclaim, the thrust of which was that Antoniou's filing of this suit equated to an "Event of Default" since filing this suit was in contravention of the release provision of the Moratorium Agreement. However, as the release provision of the Agreement had no bearing on the CD at issue in this suit, the court finds that the filing of this suit was not in contravention of the release provision, and thus did not constitute an Event of Default. Therefore, plaintiffs are entitled to summary judgment as to defendant's counterclaim.

## CONCLUSION

Defendant's motion for summary judgment as to plaintiffs' claim fails because plaintiffs' claim was not released by the Moratorium Agreement as defendant argues it was. Defendant's motion for partial summary judgment as to its counterclaim fails because defendant did not present any evidence, argument, or law in support thereof. Plaintiffs' motion for summary judgment on their claim succeeds because plaintiffs have shown that they are entitled to payment pursuant to the terms of their CD. Plaintiffs' motion for summary judgment on defendant's counterclaim succeeds

because plaintiffs have shown that the filing of the instant suit did not constitute an Event of Default.

The court's grant of summary judgment on plaintiffs' claim entitles plaintiffs to payment in full on their CD, pursuant to the terms specified in said CD. Plaintiffs purchased the CD on October 2, 1991, for $144,997.79. (Compl. [Dkt. #1] Ex. A). The terms of the CD entitle plaintiffs to a 5.40% annual rate of return. (Id.). The CD specifies that it matured thirty days from the date of purchase, and it automatically renews for successive periods equal to the original term (thirty days) until presented for payment. (Id.). Per these terms, the principal and accrued interest on the CD as of June 30, 2007 (the time of the filing of this suit), was $342,847.56. (Id. Ex. C).[3] Thus, plaintiffs are entitled to have and recover from defendant $342,847.56 together with accrued interest and costs as taxed by the clerk of the court. Accrued interest is to be calculated at 5.40%, subject to any contractual rate adjustment occurring during the pendency of this case.

Accordingly,

**IT IS ORDERED** that defendant's Renewed Motion for Summary Judgment on Plaintiffs' Claims and Motion for Partial Summary Judgment on Defendant's Claims (Docket #48) be and the same is hereby **DENIED**; and

---

[3] The $342,847.56 amount comes from an amortization schedule, submitted by plaintiffs, detailing each successive maturation date – from the date of purchase until June 30, 2007 – as well as the interest accrued for each thirty-day period, and the updated balance of the total worth of the CD at each maturation date. Defendant has not challenged plaintiffs calculations.

-12-

Case 2:07-cv-00675-JPS   Filed 01/26/10   Page 12 of 13   Document 65

**IT IS FURTHER ORDERED** that plaintiffs' Motion for Summary Judgment (Docket #42) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiffs have and recover from defendant $342,847.56 together with accrued interest – calculated at 5.40% per annum (subject to any contractual rate adjustment occurring during the case) – together with costs as taxed by the clerk of the court.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of January, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge